UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JO-ANN FAUST, PLAINTIFF | : | CIVIL ACTION NO.: |
| V. | : | |
| ESPN PRODUCTIONS, INC., DEFENDANT | : | APRIL 27, 2011 |

## COMPLAINT

**FIRST COUNT:** (Federal Family and Medical Leave Act - Interference with Exercise of FMLA Rights)

1. Plaintiff Jo-Ann Faust began working for ESPN Productions, Inc. ("ESPN") in October 1999 as an Event Coordinator II. Her name at that time was Jo-Ann Curry.

2. In 2002, she was transferred to the Remote Travel Department and became a Remote Travel Coordinator. She was the only person in that role at that time. ESPN employed a total of five (5) Remote Travel Coordinators as of 2010.

3. Plaintiff has suffered from chronic migraine headaches for many years. She was treated for this condition by a physician. This condition required her to take time off on an intermittent basis.

4. Plaintiff provided ESPN with medical documentation of her condition. She would always return to work after her migraine headaches had subsided.

5. For years, Plaintiff was able to perform her job despite this condition. Plaintiff received good performance reviews and merit increases. Her absences due to this condition never exceeded her entitlements under the Federal and Connecticut Family and Medical Leave Acts.

1

6. On October 8, 2009, Plaintiff's 35-year-old nephew died unexpectedly. Plaintiff was very close to him, and was overcome with grief when he died. His death caused Plaintiff to suffer from depression, and Plaintiff needed to take several weeks off in the month of December 2009 to treat this condition. Plaintiff returned to work without restrictions on January 11, 2010.

7. Plaintiff worked consistently through the months of January, February, March, April and May 2010.

8. On June 7, 2010, Plaintiff's ex-husband, John Curry, died unexpectedly. Plaintiff was very close to him even after their divorce, and his death again caused her to suffer from depression. Plaintiff was required to be absent from work to treat this depression for most of the month of June 2010. Plaintiff worked half days the week of July 5-9, 2010.

9. On July 6, 2010, Plaintiff was called into a meeting with Donna Hricisko, Donna Shackett, and Nancy Mello from ESPN's Human Resources Department.

10. In this meeting they asked Plaintiff a series of questions about her recent attendance issues. They asked when she will be able to work on a "consistent" or "regular" basis. ESPN did not describe what it meant by "consistent" or "regular."

11. In the past, ESPN had distributed its attendance policy and medical leave policy to Plaintiff. This policy indicated that ESPN complied with both the Federal and Connecticut Family and Medical Leave Acts.

12. Plaintiff told Hricisko, Shackett, and Mello that migraine headaches are chronic and usually incurable. She informed them that her chiropractor had recently discovered that she had an upper cervical atlas subluxation.

13. ESPN indicated that it had hired a temporary worker in December 2009 to cover for Plaintiff and that it could not do so indefinitely.

14. Plaintiff's absences in December 2009 were due to depression caused by the death of her nephew and were not related to my migraine headaches.

15. ESPN indicated that Plaintiff's absences affected the service provided to clients.

16. Plaintiff was asked if surgery would help her condition. She said that her chiropractor does not believe in surgery, but that she would follow up with her doctor to see if there was a surgical solution.

17. Plaintiff worked half days for the rest of the week (July 6, 7, 8 and 9th).

18. On Monday, July 12, 2010, Plaintiff returned to work full time with no restrictions.

19. On Tuesday, July 13, 2010, Plaintiff was called into a meeting with Donna Hriciscko at 11:00 a.m. Hricisko reviewed what she had discussed with Plaintiff on July 6, 2010 (i.e., Plaintiff's migraines) and told Plaintiff that she was terminated.

20. Plaintiff was terminated without being allowed to first explore the surgical option that had been discussed on July 6, 2010.

21. Plaintiff was terminated because ESPN believed that her migraine headaches, which were a serious health condition under the FMLA, would prevent her from having "consistent" and "regular" attendance going forward.

22. In fact, Plaintiff's migraines had never caused her to be absent for longer than the federal or Connecticut FMLA allow. It was not likely that her absences due to migraines going forward would exceed those allowances.

23. ESPN had no basis to conclude that Plaintiff's migraines would cause her to be absent in excess of her FMLA allowance in the future. In the twelve months immediately preceding her termination (i.e., July 14, 2009 to July 13, 2010), she had used fewer than 31

FMLA days due to migraines. The U.S. FMLA allowed her 60 days (i.e., 12 weeks x 5 days) during that period. The other days that Plaintiff was absent were due to depression caused by the unexpected deaths of her loved ones. Even if her absences due to migraines were the same in the next twelve months, she would not have exceeded the leave permitted by the U.S. FMLA.

24. Furthermore, Plaintiff had indicated that she would follow up with her doctor about the prospect of surgery improving her condition. Plaintiff indicated unequivocally that she wished to remain working at ESPN.

25. On October 12, 2010, Plaintiff had surgery for her migraines. Her doctors have indicated that her migraine headaches will now be less frequent and less severe. Since her surgery, she has not suffered from a migraine headache.

26. Respondent's conduct described above constitutes unlawful interference with Plaintiff's rights under the FMLA, in violation of Section 105(a)(1) of the Act, in that Plaintiff was terminated because ESPN believed that she would use her FMLA days in the future because of her migraine headaches.

27. As a direct and proximate result of this conduct, Plaintiff has suffered damages in the form of lost wages, lost benefits, and severe emotional distress.

**SECOND COUNT:** (Family and Medical Leave Act - Retaliation for Exercise of Rights under the FMLA)

1-24. Paragraphs 1 through 24 of the First Count are incorporated herein and made a part hereof as though fully set forth.

25. Respondent's conduct described above, constitutes unlawful retaliation against Plaintiff for her exercise of rights under the FMLA, in violation of Section 105(a)(1) of the Act, in that Plaintiff was terminated in retaliation for her past use of FMLA time.

26.     As a direct and proximate result of this conduct, Plaintiff has suffered damages in the form of lost wages, lost benefits, and severe emotional distress.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff claims:

1. Compensatory damages, including back pay, lost benefits, lost future earning capacity;

2. Reinstatement;

3. Liquidated damages under the Family and Medical Leave Act, 29 U.S.C § 2615 (a)(1)

4. Statutory attorneys' fees, pursuant to the Family and Medical Leave Act;

5. Interest and costs;

6. Such other relief as in law or equity may pertain.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

THE PLAINTIFF, Jo-Ann Faust

By: _____
Richard E. Hayber
The Hayber Law Firm, LLC
Federal Bar No.: ct11629
221 Main Street, Suite 502
Hartford CT 06106
Phone: (860) 522-8888
Fax:     (860) 218-9555
rhayber@hayberlawfirm.com
Attorney for Plaintiff